LATHAM & WATKINS LLP
  Perry J. Viscounty (Bar No. 132143)
perry.viscounty@lw.com
  Andrew J. Fossum (Bar No. 250373)
andrew.fossum@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California  92626-1925
Telephone:  (714) 540-1235
Facsimile:   (714) 755-8290

LATHAM & WATKINS LLP
  Jennifer L. Barry (Bar No. 228066)
jennifer.barry@lw.com
600 West Broadway, Suite 1800
San Diego, California  92101-3375
Telephone:  (619) 236-1234
Facsimile:   (619) 696-7419

Attorneys for Plaintiff and Counterdefendant
TRION WORLDS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRION WORLDS, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>     v.<br><br>PALLADIUM BOOKS, INC., a Michigan corporation,<br><br>              Defendant. | Case No.  10-cv-02466-CRB<br><br>Hon. Charles R. Breyer<br><br>JOINT CASE MANAGEMENT STATEMENT |
| PALLADIUM BOOKS, INC., a Michigan corporation,<br><br>              Counterclaimant,<br><br>     v.<br><br>TRION WORLDS, INC., a Delaware corporation,<br><br>              Counterdefendant. | |

1. **JURISDICTION AND SERVICE:** Several of Plaintiff's claims and Palladium's counterclaims arise under the Lanham Act, 15 U.S.C. § 1051, and thus this Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a). There are no issues as to personal jurisdiction or venue, and no parties remain to be served.

2. **FACTS:**

*Plaintiff's Statement of the* Case. Plaintiff, headquartered in Redwood City, California, is a developer of cutting-edge connected video games. It currently has several games under development, but has yet to sell any games to the public. One of the games under development is a massively multiplayer online video game called "Rift: Planes of Telara" ("R:PoT"), which is set to launch in early 2011. The R:PoT online game is set in a rich medieval world with swordplay, dragons, and magic, that is being torn apart by mysterious dimensional rifts:



Defendant Palladium Books is a pen-and-paper role-playing game publisher, who sells mainly role playing books. Defendant alleges that one of its series of books is called RIFTS, which describes the main plot point of the role-playing game: rifts in time and space which allow aliens to cross over to a futuristic, post-apocalyptic Earth. The game is played offline, by a small group of people sitting around a table using Defendant's RIFTS books to discuss the game:

 

Defendant is seeking damages from Plaintiff based on Defendant's vastly overstated trademark rights. Although the RIFTS mark is only used on books and a few minor related items, Defendant claims overbroad federal registration rights in the RIFTS mark, based on a pattern of fraud and deception. For example, Defendant is asserting a registration for RIFTS for computer game software, a registration that is crucial to Defendant's claim against Plaintiff's online game. Defendant obtained this registration in 1997 based on a software utility program (*not* a game)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SD\725420.3

1

Case No.  3:10-cv-02466-CRB
Joint Case Management Statement

that it briefly offered in 1995, but that, by Defendant's own admission, "only lasted a few months before it was pulled due to bugs." Regardless, Defendant obtained and renewed its registration, falsely claiming that this computer game product was still available, when it was neither a computer game nor available. As further evidence of this fraud, Defendant submitted a *book* as its specimen when renewing the registration, since it obviously did not have an actual computer game specimen to submit. Defendant made similar fraudulent statements and specimen submissions for its registration of the same RIFTS mark for movies/television shows. Despite Defendant's sworn statements of use of the mark on these services, no movie or television show has ever been produced under the RIFTS mark by Defendant.

Defendant is now attempting to capitalize on the buzz and anticipated revenues of Plaintiff's R:PoT game by claiming infringement of its RIFTS mark, even though the two companies offer markedly different products, the one shared word in the marks is a highly descriptive term that refers to a key element of the products, and Defendant's purported rights in the RIFTS mark for the relevant goods, computer games, are fraudulent. Plaintiff seeks a swift resolution to this controversy before its R:PoT game launches in 2011, while the dispute can still be decided without any alleged harm to either party. Plaintiff, therefore, seeks an expedited trial pursuant to Federal Rule 57 since this is primarily a declaratory relief action.

*Palladium's Statement of the Case.* Palladium Books, Inc. is a Michigan corporation with its sole office in Westland, Michigan, that has marketed, and sold fantasy and science-fiction role-playing games for over 30 years. Palladium's most popular role-playing game is the RIFTS® series, which is set 300 years in the Earth's future, where a major catastrophe has destroyed most the world's human population and created dimensional tears, where all manner of fantastical creatures can invade for control of the planet against the remnant military factions of humans.

Palladium's RIFTS® role-playing games have been produced in a variety of media and formats for 20 years, be it in gamebooks and supplements, in a collectible card game licensed in 2001, a computer role-playing game developed and licensed through Nokia in 2005, or in 1995 with the RIFTS® Game Master Companion, a computerized add-on to its line of RIFTS® role-playing games in book form. Palladium has also optioned RIFTS® to Walt Disney Studios for

1  production of a major motion picture to be produced by world-famous action film producer Jerry
2  Bruckheimer.  Palladium has likewise been assiduous in protecting its intellectual property,
3  successfully enforcing its mark against such infringing marks as "COSMIC RIFT"; "SOLAR
4  RIFT"; "DARK RIFT"; "THE MUMON RIFT WARS"; and others.

5        Trion Worlds, Inc. is a company with approximately 250 employees and three offices – in
6  California and Texas. Trion was launched in 2006, backed by large investors and with working
7  capital of $100 million.  But, after three years, Trion apparently found itself in disarray.  No
8  video games had been produced and the one game that the company was close to completing – a
9  computer role-playing game called "Heroes of Telara" – received lackluster reviews.

10        Trion latched onto the well-known RIFTS® mark, a mark that was clearly known to many
11  of Trion's key personnel, in an effort to trade on the popularity in that long line of role-playing
12  games.  On April 26, 2010, Trion made a public announcement that "Heroes of Telara" was no
13  more, and renamed their computer role-playing game "Rift: Planes of Telara." In the logo to the
14  game, the word "Rift" is the dominant portion of the title with the remaining "Planes of Telara"
15  being barely visible.  Trion also promoted the new game title at the industry leading E3 Expo in
16  June, 2010.  Since that time, Trion has advertised its computer role-playing game extensively in
17  national media dedicated to computer games and has marketed its game on a website accessed
18  via the URL www.riftgame.com.  It has also made its computer role-playing game available to
19  consumers for pre-order from such well-known retailers as Game Stop and Amazon.com.

20  **3.**    **LEGAL ISSUES:**

21        Plaintiff seeks a declaration that it has not engaged in infringement or unfair competition,
22  given that Defendant committed fraud and thus has no protectable rights in its RIFTS mark as to
23  the goods at issue, and there is no likelihood of confusion between the parties' marks, since they
24  only share one common and descriptive word, are used with a prominent house mark, are used
25  on very different goods, and are marketed to sophisticated customers.  Plaintiff additionally
26  seeks cancellation of Defendant's registrations, pursuant to 15 U.S.C. §§ 1064, 1119, on the
27  grounds that the registrations were procured and maintained through fraud.  Defendant willfully
28  submitted fraudulent statements to the USPTO when filing for and renewing its registrations for

1  computer game software and movies/television shows. Defendant knew that it was not using its
2  RIFTS mark on those products, yet swore under penalty of perjury that it had used and continues
3  to use that mark on those goods. Plaintiff also seeks a declaration that Defendant's federal
4  registration for books is merely descriptive, and thus not protectable, since "rifts" merely
5  describes a plot element of Defendant's books (like war or warfare for military books).

6  Palladium has brought Lanham Act claims against Trion for infringement and false
7  designation of origin, as well as state and common law claims for trademark infringement and
8  unfair competition. The following legal issues are presented by Palladium's counterclaims: 1)
9  Whether Trion knowingly and willfully infringed Palladium's federally registered and common
10 law trademarks in the RIFTS® mark, 2) has Trion's use of the Rift mark on its computer role-
11 playing game caused confusion or mistake among consumers between the two parties' goods or
12 services, and 3) has Trion sought to trade on the good will in Palladium's RIFTS® mark,
13 resulting in substantial consumer confusion and accompanying economic harm to Palladium.

14 **4.    MOTIONS:** There are no pending motions. Plaintiff anticipates filing several motions
15 for partial summary judgment to narrow the issues in this case, including, but not limited to, on
16 its cancellation claim and on its declaratory relief claim for non-infringement. Palladium
17 anticipates filing a motion for summary judgment upon the conclusion of discovery.

18 **5.    AMENDMENT OF PLEADINGS:** The parties have not reached agreement on the last
19 date for amending pleadings. Trion Worlds proposes September 30, 2010. Palladium states that,
20 based on what is presently known concerning the development of Trion's game and what may be
21 disclosed during discovery concerning the game's content, Palladium proposes December 17,
22 2010, as the last date to amend the pleadings, which should provide sufficient time before the
23 close of the proposed fact-discovery period to add any other intellectual property claims.

24 **6.    EVIDENCE PRESERVATION:** Both parties have instituted litigation hold procedures
25 as to custodians and documents relevant to the claims and defenses in this case.

26 **7.    DISCLOSURES:** The parties exchanged initial disclosures on August 30, 2010. Those
27 disclosures complied with the requirements of Rule 26(a)(1)(A), with the exception that: Plaintiff
28 states that Palladium did not provide a computation of damages or supporting documents; and

Palladium states that Trion's disclosure as to insurance agreements did not disclose what insurance agreements "may" apply.

8. **DISCOVERY:**

The parties conducted the Rule 26(f) conference on August 16, 2010, and Plaintiff served its first set of written discovery (interrogatories, requests for admission and document requests) later that day. Plaintiff has also issued a subpoena for Joan Lowenstein of Jaffe Raitt Heuer & Weiss, P.C. (*trademark prosecution* counsel for Defendant), but is still attempting to serve that subpoena on Ms. Lowenstein, as Defendant's counsel has refused to accept service on her behalf.

To date, Palladium has not propounded any discovery requests on Trion as it recently substituted counsel, and has spent much of its time responding to Trion's discovery requests, served on August 17, 2010, as well as diligently attempting to get caught up to speed in this case. To that end, an inspection by recently substituted counsel of hard copies of documents in Palladium's possession (excluding those that simply mirror information already stored on the company's computers) disclosed the presence of up to 140,000 pages of responsive and possibly responsive documents to Trion's broad document production requests.

During the conference, the parties agreed that, in addition to the methods of service provided for in the Federal and Local Rules, service can be effectuated by emailing PDF versions of the materials (confirmation to be served by U.S. Mail or facsimile) to be served to counsel for the parties, to email addresses designated by counsel. The three-day rule set forth in FRCP 6(d) shall not apply to this email service, and email service shall be considered as hand delivery pursuant to FRCP 5(b)(2)(A) for the purpose of determining the date by which a party is required to act or respond within a prescribed period.

The parties conferred on a potential discovery plan and modifications to the discovery rules, but were unable to reach agreement.

*Plaintiff's Position on Discovery Schedule.* Plaintiff requests an expedited schedule and early trial date, based on the expedited treatment afforded declaratory relief actions under Federal Rule 57, and the imminent launch of its product in early 2011. In addition, this case has essentially been going on since May 2010, when Defendant improperly filed a lawsuit in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SD\725420.3

5

Case No. 3:10-cv-02466-CRB
Joint Case Management Statement

Michigan and sought a TRO/preliminary injunction. That case was dismissed for lack of personal jurisdiction, but not before the parties fully briefed and prepared for the hearing on the PI motion, so substantial work has already been done by both sides. Plaintiff does not anticipate a significant level of discovery, since both parties are relatively small companies, and Plaintiff has only been using its R:PoT mark for a few months and has yet to actually offer its product for sale. Accordingly, Plaintiff requests a short period for discovery of 45-60 days.

*Defendant's Position on Discovery Schedule.* This is a standard trademark case with typical trademark claims for infringement and affirmative defenses of invalidity and non-infringement. The case thus should be scheduled like any other standard trademark case has been done in this district[1]: Palladium's proposed schedule – a fact discovery period running six months after the holding of the Rule 26(f) conference, followed by an expert discovery period, and a trial held within a year of the 26(f) conference – is more accelerated than most such cases.

*Plaintiff's Position on Discovery Limitations.* Defendant has requested that Plaintiff permit Defendant to take 15 percipient witness depositions. At Plaintiff's request, Defendant provided a list of anticipated witnesses, which included listings for unnamed employees of Trion (e.g., "Producer," "Art Director"), as well as "various former employees" of several third parties like Sigil, Nokia and Sony Online Entertainment. Plaintiff believes that it is premature for Defendant to request this departure from the 10-deposition limit set forth by Rule 30(a)(2)(A)(i), and further believes that Defendant can adequately obtain its desired discovery via a 30(b)(6) deposition of Plaintiff rather than noticing the individual depositions of specific personnel as Defendant has suggested. Accordingly, as Plaintiff communicated to Defendant during meet-and-confer efforts on this issue, Plaintiff is willing to discuss specific requests for additional

---

[1] *See, e.g., Bare Escentuals Beauty, Inc. v. Intelligent Beauty LLC*, CV-09-382-CRB (Complaint filed January 27, 2009, Rule 26(f) held in April, 2009, and trial date set for May 17, 2010); *Intel Corp. v. Americas News Intel Publishing LLC*, CV-09-5085-CRB (Complaint filed October 23, 2009, Rule 26(f) held in February, 2010, and dispositive motion cut-off set for March 4, 2011); *Autodesk Inc. v. Dassault Systems Solid Works Corp.*, CV-08-4397-WHA (Complaint filed September 19, 2008, Rule 26(f) held in November, 2008, and trial date set for January 5, 2010); *Gott Brothers Development v. Nicholson*, CV-09-807-VRW (Complaint filed February 25, 2009, Rule 26(f) held in October, 2009, and fact discovery cut off set for November 30, 2010); *Kema, Inc. v. Koperwhats*, CV-09-1587-MMC (Complaint filed April 10, 2009, Rule 26(f) held in July, 2009, and trial date set for January 24, 2011).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SD\725420.3

6

Case No. 3:10-cv-02466-CRB
Joint Case Management Statement

1 depositions beyond the 10-deposition limit if and when Defendant has exhausted its 10

2 depositions, and opposes Defendant's current request.

3      *Defendant's Position on Discovery Limitations.*  Palladium proposes to expand the

4 number of depositions from the 10 permitted under the Federal Rules to 15.  Palladium has been

5 able to identify a non-exhaustive list of 14 sources for likely deposition testimony.  Even if as

6 discovery proceeds and Palladium learns that depositions will be unnecessary for some of these

7 categories, there still will very likely remain the need for more than 10 deponents.

8 **9.**    **CLASS ACTIONS:** This case is not a class action.

9 **10.**   **RELATED CASES:** There are no related cases currently pending before this Court.  A

10 prior related case was filed by Defendant in the Eastern District of Michigan on May 7, 2010

11 (*Palladium Books, Inc. v. Trion Worlds, Inc.*, Case No. 10-cv-11859-JAC-PJK), but that case

12 was dismissed on June 11, 2010 for lack of personal jurisdiction.  Plaintiff filed Petitions to

13 Cancel Defendant's federal trademark registrations with the Trademark Trial and Appeal Board

14 on June 3, 2010; those cancellation proceedings have been stayed pending the outcome of this

15 action.  Palladium filed a Letter of Protest with the PTO regarding Trion's trademark application

16 for "Rift: Planes of Telara," resulting in the PTO on August 3, 2010, placing Trion's application

17 into suspension, where it currently resides.

18 **11.**   **RELIEF:**

19      Plaintiff seeks a declaration that it has not engaged in trademark infringement, false

20 designation of origin or unfair competition, given that there is no likelihood of confusion

21 between the parties' marks, and Defendant has no protectable rights in its mark as to the goods at

22 issue in this case.  Plaintiff also seeks a declaration that Defendant's RIFTS mark is descriptive

23 and not entitled to trademark protection.  Plaintiff is also seeking the cancellation of three of

24 Defendant's federal registrations based on fraud in their procurement and maintenance.

25      Palladium has requested entry of judgment in its favor and against Trion as follows:

26 1) Enjoin Trion, and all persons in active concert or participation with them, from directly or

27 indirectly using "Rifts" or any other trademark of Palladium (or variant thereof) on Trion's

28 goods, services, or commercial activities; 2) Order Trion to deliver up for destruction all goods,

products, devices, literature, advertising, and other materials bearing the infringing mark; 3) Order Trion to withdraw with prejudice its trademark application for the service mark "Rift: Planes of Telara"; 4) Award Palladium its actual damages arising from Trion's misconduct as well as award additional damages and profits of three times the actual damages and profits as well as exemplary damages, together with attorney's fees; 5) Award Palladium costs of suit; and 6) Grant such other relief as the Court may determine is just and equitable. As with many cases, the information needed to provide a damages estimate (e.g., that related to current preorders of Trion's computer role-playing game) rests solely in the possession of Trion and/or certain third-party retailers. Once Palladium is in possession of such discovery, it will be able to provide an amount of estimated damages. However, damages may continue to accrue as long as Trion continues its allegedly infringing conduct.

**12.** **SETTLEMENT AND ADR:** The parties have engaged in settlement discussions, and filed the required ADR Stipulation on August 20, 2010 (Docket #26) requesting private mediation to be conducted by November 19, 2010. The Court entered the Stipulated Order on August 25, 2010 (Docket #27).

**13.** **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:** Plaintiff has declined to consent to a Magistrate Judge for all purposes.

**14.** **OTHER REFERENCES:** This case is not suitable for any references.

**15.** **NARROWING OF ISSUES:**

Plaintiff believes that it can significantly narrow the issues in this case via an early motion for partial summary judgment on its cancellation claims, and a summary judgment motion on its declaratory relief claim, and intends to file such motions. Plaintiff further believes that early stipulation by the parties to certain undisputed facts, such as the meaning of the term "rift," and the substantial third-party use of the term "rift" (Plaintiff has already identified over 900 third party uses), would significantly reduce the amount of discovery needed and assist in more efficiently presenting this evidence at trial. Should the Court agree, Plaintiff will circulate a draft stipulation addressing these matters.

At this time, Palladium does not foresee any early narrowing of the issues by way of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SD\725420.3

8

Case No. 3:10-cv-02466-CRB
Joint Case Management Statement

1  partial summary judgment motions brought before the close of discovery. With the progression
2  of discovery, Palladium may be open to later narrowing certain issues via stipulated facts.

3  **16.   EXPEDITED SCHEDULE:**

4      *Plaintiff's Position on Expedited Schedule.*  Pursuant to Rule 57, Plaintiff requests a
5  speedy hearing on its declaratory judgment claims. The issues in this case are straightforward,
6  and Plaintiff has only been using the R:PoT mark for a few months, so discovery should be
7  limited. In addition, Defendant's past actions reflect that it desires an expeditious outcome to
8  this dispute as well, as it filed a lawsuit a few days after Plaintiff first used the R:PoT mark,
9  without first attempting to contact Plaintiff, and then filed for a TRO and preliminary injunction.
10 Finally, Plaintiff intends to launch its R:PoT game in early 2011, so a final resolution of this
11 dispute prior to that launch would be the most equitable course of action. Plaintiff accordingly
12 requests a trial date in November-December 2010. If Defendant insists on delaying resolution of
13 this action until after Plaintiff's game is released, thereby attempting to increase any alleged
14 damages, Plaintiff respectfully submits that Defendant should be barred from recovering any
15 damages allegedly incurred during the pendency of this action.

16     *Defendant's Position on Expedited Schedule.*  Palladium believes this case is not suitable
17 for expedited scheduling and the use of streamlined procedures, especially when sought solely to
18 accommodate the infringer's desire to meet certain self-imposed production roll-out schedules.
19 Palladium has been the registered holder of the four trademarks-in-suit for more than 10 years
20 and the common law owner of its RIFTS mark for 20 years; has engaged in extensive
21 enforcement of its trademark rights and should not have those long-held and much vindicated
22 rights subject to challenge in an abbreviated proceeding that provides only a limited opportunity
23 to propound and digest discovery from the accused infringer. Palladium sued Trion within 10
24 days of Trion announcing the RIFT name for its game that was still in development. Trion had
25 every opportunity to cease the infringement at the earliest stages, but has chosen to proceed with
26 the RIFT name at its own risk as litigation progresses.

27     Palladium's motion to preliminary enjoin Trion's use of its infringing mark was explicitly
28 based on Trion's declared intent to heavily market and promote its computer role-playing game

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SD\725420.3

9

Case No. 3:10-cv-02466-CRB
Joint Case Management Statement

1  at the E3 convention in June, 2010. Having been unable to prevent that massive marketing effort
2  from occurring, due solely to the issue of personal jurisdiction in the Michigan court,
3  Palladium's decision is to fully develop its case for trial pursuant to a standard case calendar.

4  **17.** **SCHEDULING:** The parties' proposed schedules are set forth in the chart below:

| Deadline | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Fact Discovery Cut-off: | Oct. 15, 2010 | Feb. 14, 2011 |
| Exchange of Expert Reports: | Oct. 15, 2010 | Mar. 14, 2011 |
| Exchange of Expert Rebuttal Reports: | Oct. 27, 2010 | Apr. 4, 2011 |
| Expert Discovery Cut-off: | Nov. 10, 2010 | May 2, 2011 |
| Dispositive Motion Hearing Cut-off: | Nov. 12, 2010 | June 6, 2011 |
| Pretrial Conference: | Mid-Nov. | July 5, 2011 |
| Trial: | Late Nov. to early Dec. | Aug. 9, 2011 |

10  **18.** **TRIAL:** This case will be tried to a jury and the expected length is one to two weeks.

11  **19.** **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS:**

12  Plaintiff restates that it has no interested persons or entities. (*See* Docket #2).

13  Defendant restates that its interested persons or entities are Kevin Siembieda, Mark
14  Freedman and Surge Licensing, Inc. (*See* Docket #18).

15  **20.** **OTHER MATTERS:** Palladium seeks realignment of the parties so that it would be the
16  nominal plaintiff in the case. There is substantial authority for doing so in a case, such as this
17  one, involving a declaratory relief action for non-infringement and/or invalidity followed by an
18  affirmative counterclaim being asserted for infringement, particularly where the infringement
19  claims had been asserted in a first-filed complaint in another jurisdiction prior to the filing of the
20  declaratory relief action. *See, e.g.*, *Gemtron Corp v. St. Gobain Corp.*, 572 F.3d 1371 (Fed. Cir.
21  2009); *PACCAR Inc. v. TeleScan Techs.*, 319 F.3d 243 (6th Cir. 2003); *Plumtree Software, Inc.*
22  *v. Datamize, LLC*, 2003 U.S. Dist. LEXIS 26948 at *7-8 (N.D. Cal. Oct. 6, 2003). Plaintiff
23  opposes this request, and asks for the chance to brief the issue if the Court plans to consider it, as
24  the parties never met and conferred on this issue.

25  Dated: September 3, 2010                     Dated: September 3, 2010
26  LATHAM & WATKINS LLP                          GIRARDI | KEESE

27  By:   /s/ Jennifer L. Barry                  By:   /s/ Stephen G. Larson
         Jennifer L. Barry                            Stephen G. Larson
28  Attorneys for Plaintiff/Counterdefendant     Attorneys for Defendant/Counterclaimant
    TRION WORLDS, INC.                           PALLADIUM BOOKS, INC.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SD\725420.3                               10                    Case No. 3:10-cv-02466-CRB
                                                                Joint Case Management Statement

## **ATTESTATION**

1  

2     I hereby attest that I have on file all holograph signatures for any signatures indicated by

3  a "conformed" signature (/s/) within this e-filed document.

4  Dated:  September 3, 2010                              By:       /s/ Jennifer L. Barry
                                                                             Jennifer L. Barry
5                                                                            Attorneys for Plaintiff/Counterdefendant
                                                                             TRION WORLDS, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System. Filing via the CM/ECF System constitutes service on all parties in this case pursuant to Section IX of General Order 45.

Dated: September 3, 2010                              /s/ Jennifer L. Barry
                                                                                               Jennifer L. Barry

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

SD\725420.3

12

Case No. 3:10-cv-02466-CRB
Joint Case Management Statement